May it please the court, Caleb Trotter for Appellants D.M. and Z.G. who are both in court today. Out of the 16 states with high school competitive dance teams, Minnesota is the last one that prohibits boys from participating. Unless this court reverses the lower court's denial of preliminary relief, both boys will be forced to miss yet another year of dance, a year they can never get back. What is the season in terms of irreparable harm? When do they try out and when do they compete? The season began in mid to late October, yet the regular season goes through the end of January with the state tournament beginning in early February. So, we would have to get a decision out sometime in the next two to three weeks in your favor for them to be able to participate this year at all, have any chance of participating this year is that what you're saying? For this school year, yes, your honor. Both boys are in 11th grade, so they would have one season of eligibility remaining if this year there wasn't enough time. Did either side even hint to the district court that Rule 65, what is it, D, might be appropriate? That issue has never been raised from either side, your honor. Attorney? I find that pretty remarkable. I mean, it strikes me as a classic case given the time limits you're talking about. And, of course, you talk about the two boys, and so I went to your motion for preliminary injunction. That's not the relief you sought unless you submitted a proposed form of order that's much narrower than your motion. You asked for an injunction enjoining the defendants from enforcing the rule that prohibits boys from participating in competitive dance teams pending the lawsuit. We did. That's the entire state. That's every high school boy in the state. Every school in the state. You can narrow the request in any way, at any time. To be honest, your honor, I don't recall we did submit a proposed order that I do not happen to have on me that was submitted along with the motion, but in the briefing, we have positioned our request as preliminary relief that would only benefit the two boys. And in the lower court, your honor. I think it was made clear. Cite me to the record where the district court was urged to issue a narrower injunction. In argument and in the briefing, we've always positioned the argument as only benefiting the two boys, DM and ZG, for preliminary relief. But that's not what your motion says. I'm not exactly sure. And the balance of harms and the balance of competitive, of irreparable injury is, in my view, significantly different between a narrow injunction and a broad injunction. So I think you're foreclosed from getting relief based on a narrow injunction by the way you've positioned it in the district court. Why? What case law would say to the contrary? Well, I can't speak to a specific case, your honor, other than that. Where in Rule 65 would it say to the contrary? I represent here before the court today that now, as well as below, throughout the briefing and argument, we have only positioned the preliminary injunction motion as providing relief for two boys. How do we, would you want us to draft the injunction order that you didn't draft? No, your honor. If it's appropriate, we're more than willing to present a draft of the order that more accurately reflects the argument. I mean, we decide cases on the district court record. This record is void. All right. But I view the balance of harms and relative irreparable injury based on the broad injunction. Point taken, your honor. Turning to the equal protection argument, the Supreme Court makes clear that the league bears the evidentiary burden to justify its girls-only dance rule under intermediate scrutiny. Indeed, the court says that the league's justifications must be exceedingly persuasive and that this court must view those justifications with skepticism to ensure they're genuine, not hypothetical, and not offered post hoc in response to this litigation. And in looking directly at the reasons why the league lacks an important governmental interest in remedying past discrimination in this case, that's because there is no evidence in the record, indeed the evidence directly contradicts, that there is a statistical basis for remedying discrimination against girls in athletics in Minnesota. And that's good news. That means that Minnesota has accomplished something that many states have not, which is achieving essential statistic equality of opportunity for boys and girls in athletics in Minnesota. And that should not concern this court that that suddenly draws all girls-only sports in Minnesota into question and are vulnerable to constitutional challenge. And that's because there are a number of other interests that could be used to uphold other sports, for example, interests in safety and maintaining fair competition. In the cases cited by the league that dealt with girls' field hockey, girls' volleyball, and girls' tennis, there was actual evidence in the record there that showed limiting field hockey was based on safety concerns and limiting tennis and volleyball were based on concerns for competition, whereas that evidence is lacking in this case. Indeed, in the volleyball and tennis cases, it showed that due to the relevant physical differences that would come into play in competition between boys and girls, girls would be excluded from competition to the benefit of boys. And that is simply not the case with dance here. And that is the league's burden to show, which they have not. Where do we figure out or find the authority for what the legislature meant when it said athletic programs in the statute? Is that each and every sport or is that the program of an institution viewed in its entirety? I'm not exactly sure, Your Honor. Isn't that critical? I don't think so. I think the only relevance that the statute 121A.04 has to this case When it gets to the specifics of single-gendered sports, it talks about teams. That's true. And then it's the so-called corollary reasoning of the district court. The other side of the corollary is in terms of impact present and past on the program. The corollary argument concerns the exceptions under Title IX, which we plan to get to in a moment. But back to the state statute specifically, there are two problems with the statute. The first is that it does not compel the league to do anything. It does not require the league to create single-sex sports. And secondly, even if the legislature were to fully repeal that statute, the league would maintain its authority so long as it complied with the Equal Protection Clause and Title IX to maintain single-sex sports if it was able to comply with the Constitution and federal law. And of course, as this case points out, those questions are directly before the court today. I want to make sure I understand the legal basis of your claim. As I understand it, this is exclusively equal protection. I don't see, and correct me if I'm wrong, where you have a legal basis for a claim under Title IX. Because Title IX only requires participation in opposite-sex, single-sex sports when there's been historic under-representation, and there's not been historic under-representation of boys. So I don't see this as a Title IX case. Am I wrong? Yes, Your Honor. We read Title IX very differently. Generally, Title IX has the general rule that single-sex sports are prohibited, unless one of two exceptions is met. Either the sport must be a contact sport, or selection to the sport's teams must be based on competitive skill. The next sentence that looks at historic under-representation is only triggered in the instance that the sport concerned has already met one of the two earlier exceptions. So that's why in the briefing we point out that it was incorrect. What case supports your interpretation? To be honest, there are no cases that touch on this. We think that's just the most natural textual reading of the regulations. See, I don't agree with that. I think the most natural textual reading of the statute is that if you have under-represented, if one gender, and we're talking about girls. There's no evidence in any record that boys have been under-represented. So I read Title IX to say you can have single-sex sports if there's been historic under-representation. Now you're providing statistics to show that, at least in Minnesota, that no longer is the case, which is, as you say, very commendable. But I guess I just don't see where Title IX even comes into play in this. I can appreciate Your Honor's point. The reason I disagree is because within its 34 CFR Section 10641, it's paragraph B that discusses the exceptions for separate teams. The first sentence discusses the contact sports and competitive skill exception. And then the following sentence says, however, where one of these teams is sponsored. I just don't read that as... The only way a team could be separate is if one of the exceptions was met. And of course, that is the basis for our focus on interpreting the competitive skill exception. But I'd like to return to the equal protection argument and specifically the tailoring aspect. And the focus of this is that the league has no evidence that girls would be displaced by allowing boys to dance. And that is critical and fatal to the league's defense under intermediate scrutiny. And we know that that's the case because there are no roster limits in dance. So if DM and ZG are allowed to try out for their school's dance teams and they make it, that will not cause a single girl to lose her spot on the team. Many schools in Minnesota even have multiple levels of dance teams, from varsity to junior varsity, B teams, and beyond. So there are many opportunities for dance to go around if boys are allowed to participate. I think that argument... I think all we can really say about that issue is that we don't know because there's never been boys on the dance team. For all we know, if boys are allowed to participate, there may be hundreds or thousands of boys who want to go on the dance team and they will have to start to put limits. Or as you say, they have an A team, a B team, varsity, junior varsity. I assume in those schools they limit the varsity. And if you don't make the varsity, you make the junior varsity. So I don't know that you can just... Just because you only have two now, I don't... All this tells us is we have two people who care enough about the final federal lawsuit. There's maybe a lot of students who, if you win, will be more than happy to be on the dance team. I disagree, Your Honor, and we do... I must say, as one who has a Minnesota granddaughter who participated in club competitive dancing and therefore I've attended some of the regional things, the gender imbalance is obvious. I mean, we don't know precise numbers, but I think it is highly unlikely that there would be a cadre of boys applicants for this that would overwhelm the programs and require a reduction in girl participation. I agree, Your Honor, and in two ways we actually do know that there is evidence that boys would not displace girls beyond the two boys in this case. That's because in the 15 states that do allow boys to participate, 99% of the participants are female. And in this case... That's evidence. And the league has never even suggested that it has a concern that boys would displace girls in dance. And the cases cited by the league previously mentioned that dealt with girls' field hockey, volleyball and tennis. The reason those sports were upheld as single sex is because there was abundant evidence in the record showing that girls would be displaced if boys were allowed to participate. Whether it was contact sport concerns with field hockey or competitive concerns in volleyball or tennis, that evidence was there. And here the league is in the best position to know that the evidence exists and their failure to produce it or even suggest that it could exist, I think is very telling to show that there is no evidence at all that boys would displace girls in dance. And as a result, even if this court were to hold that the league has an important interest in remedying discrimination, banning boys does not fur that interest because banning boys would not remedy discrimination in girls because girls would have exactly the same opportunities to dance with boys participating as they would without. And I will reserve the remainder of my time. Is there any indication that the geniuses who drafted the federal regulation had any idea what competitive skill was that they wrote in there? Not that I can tell, Your Honor. The only... In my search through the cases and other statutes, the only thing I have found that offers any kind of relevant interpretation is from the District of Colorado Hoover case, which notes that the Colorado High School Activity Association, the league's counterpart here, views competitive skill as focusing on differences between males and females. And as we noted in our reply brief, that interpretation is in line with the interpretation we offer, which also goes hand-in-hand with our displacement argument, which is the focus under Title IX in the competitive skill exception must be looking for some inherent physical difference between the sexes that causes one to have a competitive advantage over the other. If that is not the interpretation of competitive skill, then the exception swallows the rule and makes the contact sport exception entirely redundant. Because if the league's interpretation is adopted by this court, which is essentially that if the nature of the activity is competitive and the athletes are athletic, then every sport would satisfy the exception and every sport would be permitted under Title IX to be single-sex, and that simply cannot be true. If the state authority said so. I mean, one interpretation of the reg is we want to protect whatever they want to have protected, which would not be a surprising... That's true, Your Honor. That's true, Your Honor. And I will reserve the remainder of my time. Thank you. Mr. Beck. Good morning, Your Honors. May it please the Court, opposing counsel, I'd like to begin by addressing the competitive advantage or the competitive skill exception that was touched on at the end of counsel's opening argument. They seek a competitive advantage reading of the statute, which is not what the statute actually says. The plain language of 106... or excuse me, of 34 CFR 160.41... That's not in the statute. Excuse me, the regulation. I apologize. There's a big difference. For sure, for sure. I agree, Your Honor. It says where selection for such team is based upon competitive skill, there can be separate single-sex sports. And to Judge Malloy's point, Title IX is triggered with the under-representation to remedy past discrimination against girls. Well, can you name a... Can you tell me a sport that doesn't select participants based upon competitive skill? At least at the varsity level. You may have club sports where in some schools everybody gets to play intramural basketball. But, I mean, at the varsity level? Can you name a sport? It depends, I guess, how you define competitive. You know, teams may select players... Players may be cut even though they are more skilled in this particular sport because they don't fit the requirements for a team. The flip side is, how many things that are classified as extracurricular? Uh... They do have competitive skill criteria. To make teams. Correct. So, if the drafters were trying to differentiate... I'm not even sure why they would between sports and extracurricular, competitive skill strikes me as a terrible way to get at it. And it could be... We all know why that's in there. Because of... The difference in gender... Impact of contact sports on the two genders. But beyond that... Badminton versus debate. Understood. Sure. Athletic departments have to define what is a sport in order to define what's in there for me. Correct, Judge. Getting an anti-discrimination statute this way just strikes me as bizarre. I don't disagree, Your Honor. We're stuck with the language of the regulation which uses the phrase and the term competitive skill. And that is what the regulation says. The regulation doesn't get into the details of... For example, as appellants argue... The court has given it Chevron deference. That reg. Yes. I don't know. I'm not aware of... Like appellant's counsel said, I'm not aware of any courts who have gotten into a decision on defining what competitive skill means. My point in this is that competitive skill is plain and unambiguous in the sense that if it requires competitive skill to make the team, then the exception is triggered. So there's two layers. First, if it requires competitive skill, there's substantial evidence in the record that competitive skill is required to make the dance team. There's effectively two levels of tryouts. There's the initial tryout to make the team and then there's evidence in the record that there's effectively a secondary tryout to make formation. And it's cited in my brief. I think it's the actual citation. It's in Appendix 211 to 221. And there's a specific section in there from a school, Laconia High School in Minnesota that talks about... This is on Appendix 214. Laconia High School dance team holds tryouts prior to each competition to be sure that every dancer is fully prepared and ready to perform. Athletes may be cut if they cannot properly execute the dance moves and do not have high kicks as high as team members or do not have flat splits. So there's multiple competitive skills involved in dance team and that's why this exception applies under Title IX. And the district court properly found that. There was no discussion of the likelihood of success standard that the court the underlying court found. We believe that the district court properly applied the more rigorous standard under rounds. The rounds language referred repeatedly to implementation of a statute. 731 talks about whether to grant a preliminary injunction preventing the quote implementation of a statute 731 to 732 later on talks about a party seeking a preliminary injunction of the implementation of a state statute must demonstrate more than a fair chance Do you think that issue matters? I do in two ways. One, it matters in the sense that it's a higher evidentiary or a higher burden for appellants to meet. And two, even if it doesn't apply the court, the district court properly found that they didn't they didn't phrase it in terms of fair chance. I think he raised that they didn't raise a question The data phase says almost never will this matter It's only when the balance tips decidedly in the favor of the moving party that you might want to go that you might want to worry about this artificial 50% rule And in that sense the district court The fact that the briefs take off and spend their first first ten trees arguing that surprised me a bit As I was preparing for argument I had a sneaking suspicion that that would be the case I think it matters in the sense that it doesn't matter in the sense that the district court properly found that the balance didn't so favor the moving party in this case The public interest the district court properly found favored the Minnesota State High School League and the likelihood of success whichever standard is applied was not met I guess the bottom line for me is you have a facially discriminatory statute or regulation, it's not a statute regulation that prohibits boys from being on the girls dance team. Does it not become your burden then to come up with some legitimate justification for that? Well just to clarify, point of clarification there is the federal regulation and there is an actual state statute that effectively has the same language that allows for single sex. Allows for but as I think your opponent has been very careful to point out does not require it. It's a state it's a state high school authority association regulation that's at issue here Yes and no judge it is a state high school league policy that implements the express unambiguous authorization from a state statute. I don't think, I think the distinction between compelling and authorizing is a false one. The district court found that 121 8.04 provided the legitimate governmental interest in essentially improving opportunities for girls to participate given their historic underrepresentation in high school athletics Do you have any justification beyond that statute for the regulation or policy? There is legitimate there is ample evidence as you noted in opening that boys have not been underrepresented. That girls have been underrepresented. Past discrimination remedying past discrimination is a legitimate government interest narrowly tailoring at the higher level strict scrutiny standard restricting girls sports teams and programs to girls only addresses and is substantially related to that important governmental interest. What do we make of the statistics that show that Minnesota's achieved parity for at least the last four years? It's promising for sure and it shows that this policy works that having this policy in place since 1996 with respect to dance since the early 80s when the state statute was passed is getting there Is it your argument essentially that having achieved effective parity that this remedial approach should go on at infinitum? I don't think at infinitum your honor but two years four years that's not enough to overcome decades of past discrimination against girls in sports and it should be noted at this time if appellants are successful in their title 9 argument then that flips the scales and removes approximately 5,000 female student athletes out of the title 9 analysis and now That's only if they win the argument that it's not a sport. Correct. That's not what we're talking about right now. Correct. It's a difficult question to answer I think the Supreme Court modern affirmative action jurisprudence places in at least some doubt the notion that past discrimination standing alone is sufficient to withstand equal protection challenge. And it may be tilted And it looks from the numbers like we're almost there. And it depends on what numbers you look at your honor. If you look at just Minnesota if you look nationwide I think the amicus brief from the National Federation of Heights Your legislature didn't do that. Correct. They didn't. But title 9 certainly did. Title 9 certainly did. Let me bring you into where I started with opposing counsel if if the defendants made no effort or suggestion of consolidating the injunction motion with the merits is there any explanation of why? No Judge. If we were to order that to happen how fast do you think this could be ready for trial on the merits? I couldn't tell you your honor. Relatively quickly. A lot of the data is already there. Somebody is going to say I have to go out and depose every athletic department high school in the state but we know that's not true. It strikes me this could be ready for trial before the end of the season and be tried. Well depending on court calendars and individual calendars it could potentially be ready. I forget there's judicial administration from the parties standpoint or at least your standpoint isn't this something that could be served up on the merits so we don't have to worry about the data phase problem and we have the district courts bottom line view of these issues. I think it could. I think it could. You have any evidence your opponent says you have no evidence that girls would be displaced if boys were allowed to be on the team. What is the evidence or your record on that? Your honor I agree with you it's speculative and plaintiffs or excuse me appellants effectively seek for the high school to prove a negative and how can we prove that there will be displacement? If every other state in the nation that has this has dance teams allows boys I think that would be one compelling piece of evidence if it's as they say 99% girls even when boys are allowed to me that's a pretty compelling piece of evidence. I'm not aware that that evidence is actually in this record and so it's difficult for me to respond to that at oral argument. What I can say is that there are in fact roster limitations and there's the inherent roster limitations by rule and then there's the practical roster limitations in terms of you can't put 150 girls or if they're successful girls and boys on the floor to dance at one particular time and so there's again this goes back to the competitive advantage there's still two levels of factors that go into determining the team that takes the floor and by its very nature that leads to the potential for displacement and Clark too which was decided in I think 1989 by the 9th circuit addressed this when it reaffirmed that if males are permitted to displace females even to the extent of one player then the goal of equal participation by females in interscholastic sports will be set back not advanced that's 886 F second 1193 so the potential for displacement is very real even if 99% under the Clark holding that's not enough or that's enough to affirm in that case a rule prohibiting boys from participating on girls volleyball let me go back to the second issue I raised with opposing counsel and that's the breadth of the injunction did the defendants make any note of that in the district court we have always taken the position that it was the broad injunction that was requested in the district court if you look in the record it's on appendix 294 that's how the district court framed it when the district court denied the injunction they recited the motion standard as quote they seek a preliminary injunction prohibiting the Minnesota state high school league that's what I thought but the follow up is in your view does that affect the balancing of the irreparable injury and public impact on the public interest yes your honor because it's not narrowly limited to just these two students it would be broadly applied to the entire policy as it applies to girls dance team throughout it strikes me in that vein correct me if I'm wrong that an injunction that just said these two boys may participate in their schools pending the litigation would not be viewed with pleasure by the league but could rather readily be accommodated or complied with yes the league will obviously comply with a court order if that were the case but more to the point without disrupting without causing the disruption that's claimed in arguing against the broad injunction in other words those two high schools would have to be okay your teams are okay to compete all the way to the end of the season with those two boys that doesn't strike me as a big a big irreparable injury to what the league is attempting to do with this program correct yes and no I would posit even if the order is narrowly tailored to that point it would still be very difficult there's a potential for more litigants to file suit and want to participate in girls dance team and that would be exhibit one to the complaint is the court order allowing these two specific boys which then brings it right back to the broader statewide impact you can deal with you can deal with interveners if the district court can deal with them first of all by accelerating the trial pending this lawsuit is a very finite block of time hopefully just this season if I might just take a step back I want to think a little bit again about the competitive skills and the potential for displacement and I'm going to show my ignorance I had daughters that were in ballet and danced but they never did any competitive dance and I understand that there are two separate categories of competition high kick which I presume does not involve any sort of athletic lifting vaults or anything where males would be at a significant competitive advantage but there's also the category of jazz and I just simply don't know are there in fact throws vaults those types of things in jazz and do you get in a situation where it becomes competitively advantageous for coaches to go out and to recruit significant numbers of males to improve their competitive footing in the competitions I don't necessarily know if there's vaults but there is a physical aspect to both high kick and the jazz competitions where there could potentially be a It strikes me though with high kick that the idea is generally there is more uniformity and precision and so having someone that has the ability to vault 43 inches higher in the air than someone else does you very little but I'm looking at jazz and I might say that if it's more like ballet listen if you go to a ballet and all you have are girls it's a less fulfilling experience than if you have a ballet that has men involved in it because there are just different things imagine the nutcracker all by women as opposed by allowing men to participate it's a different performance and a different experience and I'm just wondering I just don't know what this jazz thing is and it may not matter at all but I see a possibility that there may be an inherent advantage to having men involved in this process that if pursued with a firm intent to win which in all competitive things ends up happening that you might displace some women and I just don't know if that's real or just a castle in the sky I've managed to build I think it's a very real possibility Judge If I could back up to Judge Loken one of the questions you had asked with respect to is it program or sport with the 121A.04 the Second Circuit has held that the Title IX and this is a McCormick compliance should not be measured by a sport specific comparison but rather by examining program wide benefits of opportunities and the hypothetic sure compliance should not be measured by a sport specific comparison but rather by examining program wide benefits and opportunities and what the hypothetical example that they used my time is running out is you could provide better equipment for a boys basketball team than the girls basketball team provided program wide you provide you balance that and so for example they said you could provide better soccer equipment for the girls team than to the boys team and that's the program wide view equal funding issue which I understood to be the main Title IX enforcement compliance recurring or persisting problem it is certainly one of them your honor and one last point you know OCR although it is a non-binding decision it is directly on all fours on this very specific issue with the same defendant the Minnesota State High School League the Minnesota State High School League believes that district court did not abuse its discretion in denying the injunction and we ask that you affirm it. Thank you. I'd like to briefly get back to your concern Judge Loken on the breadth of the injunction the evidence in the record shows that the league itself admits it's only aware of three boys ever to express an interest in participating in dance so with that understanding this case has been argued and briefed with the assumption that the preliminary relief would only apply to the two boys in this case because the third boy lives in Wisconsin and his school no longer competes in Minnesota to the concerns raised by Judge Erickson regarding technique aspects there's the scoring criteria pointed out by the league for competitions is more appropriately understood as choreography and technique and this court and Brendan which was mentioned by the league that's 477 F 2nd 1292 notes that technique is hardly a function of sex and distinguishes the factors such as coordination, concentration, agility and timing from factors that are more relevant in a context that would create a physical competitive advantage for one sex over the other and then back to the equal protection argument that the interest is furthered by limiting boys. Any interest in remedying discrimination cannot be furthered when girls will not lose any opportunities if boys are allowed to participate. The 99% factor shows that it doesn't say that all you want to do is compare the broad numbers the increase in boys affects the ratio I think that would be an unconstitutional objective but that's what many people talk about it could increase the ratio which could cause the statistics on under representation to skew back but that would only go to showing that the league would have an interest in remedying discrimination in the future if that were to happen it does not say anything to the necessary 2nd factor of displacement the cases that the league sites involving field hockey volleyball and tennis in all of those cases the sports as single sex were only upheld because there was evidence showing that boys participation would actually displace girls and that is not present here the league does not even claim so is that from the state statute or the federal reg or just case law or the way you think it ought to be interpreted I think it's the general case law from the supreme court as well as the cases if we look at Hogan the Mississippi University for women there the interest articulated by the university was to redress employment discrimination against women but the court noted that women held 99% of nursing degrees and had vast majority in the nursing profession and as a result prohibiting men from enrolling in nursing wouldn't take any opportunities from women and as a result that justification was not valid and the court struck down that single sex limitation and finally the lower court did not actually use the state statute as a basis for saying that the league could create single sex sports it merely said that the statute supported the league's decision to do so and with that we ask this court to reverse the lower court and instruct it to issue preliminary relief thank you very much thank you counsel the case is very well briefed and the argument was helpful and articulate on both sides we'll take it under advisement thank you